# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ADDYSEN L. MURRIETA                                                                PLAINTIFF
ADC #160745

v.                                      5:17cv00029-BSM-JJV

ANDREWS, Warden,
ADC; *et al.*                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

   1.      Why the record made before the Magistrate Judge is inadequate.

2.	Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.	The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I.	INTRODUCTION**

Addysen L. Murrieta ("Plaintiff") brings this action *pro se* and pursuant to 42 U.S.C. § 1983.  (Doc. No. 2.)  He alleges his due process rights were violated when he was issued a major disciplinary for being under the influence of illicit drugs despite negative drug test results.  (*Id*. at 3.)  He seeks monetary damages.  (*Id*. at 4.)  Defendants Andrews,[1] Watson,[2] and Terrie L. Banister have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law on Plaintiff's claims.  (Doc. No. 19.)  Plaintiff has not responded, and this matter is now ripe for a decision.  After careful review, and for the

---

[1] This Defendant's name is Jeremy Andrews.  (Doc. No. 9 at 1.)  The Clerk is directed to amend the docket to reflect his full name.
[2] This Defendant's name is Lacamra Watson.  (Doc. No. 9 at 1.)  The Clerk is directed to amend the docket to reflect her full name.

following reasons, I find the Motion for Summary Judgment should be GRANTED and Plaintiff's Complaint should be DISMISSED with prejudice.

## II. FACTS

On July 8, 2016, Defendant Watson, a Corporal at the Pine Bluff Unit of the Arkansas Department of Correction ("ADC"), charged Plaintiff with three rule violations: use of drugs, alcohol, and/or chemicals not medically prescribed; creating unnecessary noise; and resisting apprehension. (Doc. Nos. 19-2 at 1, 19-4 at 15.) According to the charge, Defendant Watson had entered Plaintiff's barracks and witnessed him running toward the front of the barracks, flipping over beds, and yelling. (Doc. No. 19-4 at 15.) When Plaintiff saw Defendant Watson approaching him, he turned and ran in the opposite direction, flipping over more beds as he ran. (*Id*.) According to Defendant Watson's impression, Plaintiff appeared to be under the influence of illicit drugs. (*Id*.) She ordered Plaintiff to stop, but he continued to run around the barracks. (*Id*.) She called for all available officers; when other officers and medical personnel arrived, Plaintiff was handcuffed and placed in a wheelchair. (*Id*.) He was escorted to the infirmary, where medical staff observed he was "[a]wake, very disoriented, slow to response, dilated pupils, and appeared to be under the influence of an illicit drug." (*Id*. at 11.)

A couple hours afterward, Plaintiff was tested for amphetamines, cocaine, methamphetamine, morphine, oxycodone, PCP, PPX, THC, and K-2. (*Id*. at 10.) The test results were negative. (*Id*.) Plaintiff was placed on DCR status pending a disciplinary hearing. (*Id*. at 14.) He was notified of the charges on July 12, 2016, and he provided the

names of five inmates whom he wished to call as witnesses.  (Doc. Nos. 14 at 4, 19-2 at 1-2, 19-5 at 5.)  Four of them provided witness statements.  (Doc. No. 19-4 at 16-20.)

Defendant Banister, an ADC Disciplinary Hearing Officer, presided over Plaintiff's disciplinary hearing on July 19, 2016.  (Doc. No. 19-3 at 1.)  Plaintiff pleaded not guilty to the charges of use of drugs and resisting apprehension; he entered a guilty plea to the charge of creating unnecessary noise.  (*Id*. at 2.)  He provided a statement for the record, which Defendant Banister considered.  (*Id*.)  Plaintiff stated he had been sick on July 8, 2016 – specifically, he had been having problems with blood in his stool and was "real light headed."  (Doc. No. 19-2 at 2.)  He said he had "blacked out" and did not remember much but did not recall running from staff or flipping over beds.  (*Id*.)  He also stated he had passed the drug tests.  (*Id*.)  In addition to this statement, Defendant Banister also considered staff reports of the incident, the drug test results, the infirmary report, a photograph of Plaintiff, a movement slip and segregation order, and the witness statements.  (Doc. No. 19-3 at 2.)  She found Plaintiff guilty of all three rule violations.  (*Id*., Doc. No. 19-2 at 2.)  He was required to serve thirty days in punitive isolation, and his class was reduced.  (Doc. No. 19-2 at 2-3.)

Plaintiff appealed to Defendant Andrews, Warden of the Pine Bluff Unit, noting his negative drug test results.[3]  (Doc. No. 19-4 at 21.)  Defendant Andrews affirmed Defendant Banister's decision.  (Doc. No. 19-2 at 3.)  Plaintiff then appealed to the Disciplinary

---

[3] In his appeal, Plaintiff disputed only the guilty finding on the drug charge.  He stated, "[A]s for the other two things I was charged with, I fully understand why and can [accept] my punishment."  (Doc. No. 19-4 at 21.)

4

Hearing Administrator and finally to the Director, both of whom also affirmed. (*Id.*, Doc. No. 19-4 at 21-23.)

Plaintiff filed his Complaint on February 2, 2017. (Doc. No. 2 at 1.) He alleges his due process rights were violated because he provided "more than enough evidence" to prove his innocence on the drug charge but Defendants ignored it and refused to acknowledge it. (*Id.* at 3.) He contends he had been having medical problems on the day in question and was feeling dizzy and light-headed before heading for the door to seek help. (*Id.*) On his way, he tripped and fell, hitting his head on the concrete floor. (*Id.*) Plaintiff also points out his drug test results were negative. (*Id.*)

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann*

*v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.   ANALYSIS

### A.   Official Capacity Claims

Plaintiff has sued Defendants in both their personal and official capacities.  (Doc. No. 2 at 2.)  He seeks only monetary damages.  (*Id*. at 4.)  Plaintiff's claims against Defendants in their official capacities are barred pursuant to the doctrine of sovereign immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity).  Accordingly, I recommend Plaintiff's official capacity claims against Defendants be dismissed.

**B.     Personal Capacity Claims**

Defendants contend they are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities. (Doc. No. 20 at 6.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the

---

[4] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

7

affirmative. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). Upon review of the record in this case, I find the facts shown, construed in the light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

Inmates are entitled to due process of law, and prison authorities must provide an inmate with the appropriate level of due process before depriving him of a protected liberty interest. *Goff v. Dailey*, 991 F.2d 1437, 1440 (8th Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). However, due process does not entitle inmates to a disciplinary hearing at which they are on equal footing with prison authorities. *Id.* at 1441. "Inmates are certainly not constitutionally entitled to the level playing field created by a fully adversarial proceeding which uses a preponderance of the evidence standard." *Id.* A prison disciplinary hearing must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority, but it does not require a full evidentiary battle between the prosecuting prison officials and the defending inmate. *Id.* at 1442. Thus, "due process is satisfied if the disciplinary committee bases its decision on 'some evidence' in the record." *Id.*

This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (quoting *U.S. ex rel. Vajtauer v. Comm'r of Immigration at Port of N.Y.*, 273 U.S. 103, 106 (1927)). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Id.* Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the

disciplinary board.  *Id.* at 455-56.  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  *Id.* at 456.

There is some evidence in the record of this case supporting the conclusion reached by Defendant Banister.  According to her Declaration, she considered Plaintiff's statement, staff reports, the drug test results, the infirmary report, a photograph of Plaintiff, a movement slip and segregation order, and witness statements in concluding Plaintiff was guilty of all three rule violations.  (Doc. No. 19-3 at 2.)  The staff reports and the infirmary report constitute evidence supporting Defendant Banister's finding that Plaintiff was guilty of using illicit drugs.  Defendant Watson reported she had witnessed Plaintiff running toward the front of his barracks, flipping over beds, and yelling.  (Doc. No. 19-4 at 1.)  She stated he turned and ran in the opposite direction, flipping over more beds, when he saw her approach, and he refused to comply with her order to stop.  (*Id.*)  Defendant Watson stated Plaintiff appeared to be under the influence of illicit drugs, an impression based in part on his slurred speech and his being "stronger than usual."  (Doc. No. 19-1 at 2.)  Marvin Turner and Randy Domineck, the officers who responded to Defendant Watson's call for assistance, corroborated this report.  (Doc. No. 19-4 at 6-9.)  The nurse who evaluated Plaintiff in the infirmary immediately afterward observed he was "very disoriented" and "slow to response," had "dilated pupils," and "appeared to be under the influence of an illicit drug."  (*Id.* at 11.)

I understand Plaintiff's argument that the negative drug test results cast doubt on whether he was actually under the influence of illicit drugs.  But, under the "some

9

evidence" standard, weighing of the evidence is not appropriate. *Hill*, 472 U.S. at 455. Because there is some evidence in the record supporting Defendant Banister's decision, and that of Defendant Andrews and others on appeal, Plaintiff has failed to demonstrate a due process violation.

Plaintiff's only specific allegation is that Defendants ignored the evidence he presented to prove his innocence. But the Declaration of Defendant Banister, as well as the documents from the disciplinary hearing, show the negative drug test results, witness statements, and Plaintiff's own statement were in fact considered. (Doc. Nos. 19-2 at 2-3, 19-3 at 2.) Otherwise, Plaintiff does not allege any procedural deficiencies. Procedural due process in prison disciplinary proceedings generally requires the following: (1) the inmate be given written notice of the charges no less than twenty-four hours before his appearance; (2) the factfinder provide a written statement as to the evidence relied on and reasons for the disciplinary action; (3) the inmate be allowed to call witnesses and present documentary evidence in his defense, if permitting him to do so will not jeopardize institutional safety or correctional goals; and (4) in certain cases, the inmate be free to seek the aid of a fellow inmate or other counsel substitute. *Wolff*, 418 U.S. at 564-70. Plaintiff has not alleged he was denied any of these protections, and the record shows all were provided to him.

For these reasons, Plaintiff has failed to demonstrate a violation of his due process rights. Defendants are entitled to qualified immunity on Plaintiff's claims against them in their personal capacities.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. The Clerk of the Court amend the docket to reflect the full names of Defendants Jeremy Andrews and Lacamra Watson. (Doc. No. 9 at 1.)

2. Defendants' Motion for Summary Judgment (Doc. No. 19) be GRANTED.

3. Plaintiff's Complaint (Doc. No. 2) be DISMISSED with prejudice.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 16th day of October, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE